1014

29 C.C.P.A.(Patents)

## In re DAVIS et al.

### Patent Appeal No. 4554.

Court of Customs and Patent Appeals.

Feb. 24, 1942.

Thomas E. Scofield, of Kansas City, Mo., for appellants.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office rejected claims 7 to 12, inclusive, of appellants' application for a patent for "Method of Synthesizing Olefins" and upon appeal to the Board of Appeals the decision of the examiner rejecting said claims was affirmed. Appellants have here appealed from the decision of the board.

The alleged invention is well described in the opinion of the board as follows: "The invention is a method of synthesizing olefins. Applicants employ as starting material saturated paraffinic hydrocarbons of such a high molecular weight that their monochlor derivatives melt lower than the hydrocarbons themselves. The hydrocarbons are first halogenated. By this halogenation step a mixture is obtained containing unhalogenated hydrocarbons, monohalogen derivatives and polyhalogen derivatives. The mixture is chilled and at successively lower temperatures, unhalogenated hydrocarbons, dehalogenated hydrocarbons, trihalogenated hydrocarbons and more highly halogenated hydrocarbons are separated from the mixture. Each one of these separate halogenated hydrocarbons are then dehalogenated."

The references relied upon by the tribunals below are:

Pier et al., 2,189,924, February 13, 1940.

Gardiner et al., 2,082,203, June 1, 1937.

Graul, 1,202,282, October 24, 1916.

British patent No. 5,429, November 28, 1912.

The examiner rejected claims 7 to 9 on the ground of aggregation. The board disapproved of this ground and we are not concerned with the same.

All the claims, 7 to 12, inclusive, were rejected as being unpatentable over Pier et al. or Graul.

Claim 7 is illustrative of all the claims on appeal and reads: "7. A method of synthesizing olefins including the steps of halogenating saturated paraffinic hydrocarbons having such a high molecular weight that their monochloro derivatives melt lower than the saturated paraffinic hydrocarbons themselves, to form a crude halogenated mixture containing unhalogenated hydrocarbons, monohalogen derivatives and polyhalogen derivatives, chilling and separating the crude mixture at successively lower temperatures to obtain the relatively pure unhalogenated hydrocarbons, monohalogenated hydrocarbons, dihalogenated hydrocarbons, trihalogenated hydrocarbons and more highly halogenated hydrocarbons respectively and separately dehalogenating each of the relatively pure halogen derivatives to obtain the relatively pure unsaturated hydrocarbons."

Claim 7 is the broadest of the appealed claims. Claims 8 and 9 differ from claim 7 in that they are narrower, and claims 10, 11 and 12 are based, respectively, upon claims 7, 8 and 9, having added thereto the limitation that the dehalogenating step is practiced in the presence of an alkaline earth. It is conceded by appellants that if they are not entitled to claim 7, they are not entitled to any of the claims, and it is also conceded by the Solicitor for the Patent Office that if appellants are entitled to claim 7, they are entitled to all the appealed claims. In view of the concession of appellants and our conclusion as to claim 7, it is unnecessary to give separate consideration to the other claims.

Graul uses as a starting material petrol hydrocarbons consisting chiefly of normal pentane and isopentane. Claim 7 on appeal here is limited to a starting material of "saturated paraffinic hydrocarbons having such a high molecular weight that their monochloro derivatives melt lower than the saturated paraffinic hydrocarbons themselves."

The examiner and the board concluded that invention did not rest in employing a high molecular weight hydrocarbon as a starting material and separating the chlorinated products by chilling rather than by distillation. The board called attention to the fact that Pier et al. teaches using high molecular weight hydrocarbons and separating the halogenated derivatives by cooling to successive lower temperatures. The board evidently approved the examiner's several reasons why the foregoing substitution was not deemed inventive and therefore not patentable over either Graul or Pier et al. The examiner said in part:

"Furthermore, it is the Examiner's opinion that no invention is involved in substituting for the distillation step disclosed by Graul, other methods of separation such as fractional crystallization, with or without a solvent, as recited in claims 7 and 8, or by fractional liquefaction (sweating), as recited in claim 9. These methods for effecting separation [of] an organic mixture into its individual components are, in general, old. The particular method of separation which will be applied to a given mixture is, of course, a matter of discretion with the chemist and will, to a large extent, depend upon the nature of the mixture being separated. Applicant's argument that fractional distillation is not feasible with higher molecular weight materials may be true, but this does not mean it is impossible. * * *

"With respect to claims 10 to 12, it should be noted that Graul specifically discloses the use of lime, which is an alkaline earth, in the dehalogenation step."

The examiner also rejected claims 7 to 9, inclusive, as lacking invention over Pier et al., particularly in view of Gardiner et al. This ground of rejection was also approved by the board. In view of the fact that we approve of the holding of the board that the examiner's rejection of claims 7 to 12, inclusive, upon either the patent to Pier et al. or Graul was proper, it is not necessary to describe the Gardiner et al. patent.

Appellants argue that no single reference disclosed their method and urge that the Patent Office tribunals should not have combined references to defeat their claims. It is not denied, however, that every step defined in appellants' claims is shown in the prior art. Appellants also apparently rely upon the limitation in the claims "to obtain the relatively pure unsaturated hydrocarbons." We think it was properly pointed out by the examiner that this distinction is one of degree and not one of kind and could not be relied upon to lend patentability to the claims. The examiner stated: " * * * Obviously, the purer each halogenated fraction is before dehalogenation, the purer will be the resultant olefin."

Emphasis is also placed upon the fact that Graul starts with a relatively low boiling point hydrocarbon while appellants start with hydrocarbons having a high molecular weight. Pier et al. start with a high molecular weight hydrocarbon. The tribunals below held that the skilled chemist, without the exercise of inventive genius might use either class of hydrocarbons as a starting material. We agree with this conclusion. As we said in Re Williams, 24 C.C.P.A.,Patents, 861, 87 F.2d 499, 501: "A process does not become patentably new merely because it is applied to a different object or material. [Citing authorities]"

The second step is that of chilling. Concerning the second step recited in the claims, the examiner held it to be old in the art and that it would not be inventive to substitute it for the distillation step of Graul.

We have studied with care the completely concurring decisions of the tribunals

below with respect to the rejection of the claims upon the prior art and have considered carefully all of appellants' arguments. The issue presented narrows down to the question as to whether or not it was inventive, in view of the prior art cited, to produce olefins in the manner defined by the claims involved.

██ It is not necessary that any single reference disclose the steps of a method claim, and where a method comprises a number of steps, each of which is old in the art, it becomes a question of whether invention rests in combining the steps in a process. In re Hàrrison, 22 C.C.P.A., Patents, 1341, 77 F.2d 635, and cases cited therein.

██ Believing as we do that appellants have done nothing more than a skilled chemist in the art involved would do without the aid of inventive genius, we must hold that the decision of the board, affirming that of the examiner, should be, and it is, affirmed.

Affirmed.